AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California

UNITED STATES OF AMERICA

Plaintiff,

v.

OSCAR CARDENAS,

Defendant.

Case No. SA 19 - 248 M


FILED
CLERK, U.S. DISTRICT COURT
MAR 25 2019
CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of December 13, 2018 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § Section 1708: | Possession Of Stolen Mail |
| Title 18 U.S.C. § Section 1344: | Bank Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Loren Rofé, U.S. Postal Inspector (USPIS)
Printed name and title

Sworn to before me and signed in my presence.

Date: March 25, 2019

City and state: Santa Ana, California

AUTUMN D. SPAETH
Judge's signature

Hon. Autumn D. Spaeth, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Loren Rofé, being duly sworn, hereby depose and swear:

I. **INTRODUCTION**

1. I am a United States Postal Inspector and have been employed with the United States Postal Inspection Service ("USPIS") since March 2001. I am currently assigned to the Los Angeles Division Mail Theft Team in Long Beach, CA. My duties as a U.S. Postal Inspector include the investigation of violations of federal law, including the theft and possession of United States Mail matter. I have received formal training in the investigation of these federal crimes at the USPIS Academy in Potomac, Maryland. I have participated in several investigations involving the theft of United States Mail. Prior to being assigned to the Mail Theft Team, I was assigned to the Prohibited Mailing Narcotics Team in Los Angeles, CA, where my duties included investigating narcotics violations involving the United States Mails. I was also previously employed as a Special Agent with the United States Immigration and Naturalization Service from January 1996 to March 2001.

II. **PURPOSE OF AFFIDAVIT**

2. This affidavit is made in support of a criminal complaint and arrest warrant for OSCAR CARDENAS ("CARDENAS") for possession of stolen mail, in violation of Title 18, United

States Code, Section 1708, and bank fraud, in violation of Title 18, United States Code, Section 1344.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from bank investigators and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. BACKGROUND

4. Based on my training and experience, and my consultation with other United States Postal Inspectors, I am aware of organized U.S. Mail theft rings that operate as follows:

    a. The members of the mail theft ring steal U.S. Mail in a variety of ways, such as:

        i. submitting fraudulent U.S. Postal Service "Change of Address" ("COA") requests to divert mail from a victim's residence and forwarding the mail to a suspect address or "drop" location;

        ii. using stolen or counterfeit United States Postal Service ("USPS") arrow keys to open USPS collection or mailboxes;

2

iii. jamming USPS collection boxes with paper, so envelopes placed into USPS collection boxes are accessible to someone reaching into the box;

iv. reaching into USPS collection boxes overflowing with U.S. Mail;

v. "mailboxing," a process by which individuals drive through affluent neighborhoods and steal both outgoing and incoming U.S. Mail from residential mailboxes; and

vi. "fishing," using a homemade sticky device lowered into USPS collection boxes to extract U.S. Mail through the deposit slot.

b. The members of the mail theft ring typically steal U.S. Mail in order to obtain USPS customers' credit cards, credit card statements, credit card convenience checks, and correspondence containing USPS customers' personal or financial information. The members of the mail theft ring use the information obtained from the stolen U.S. Mail matter to conduct "account takeovers," in which they add their (suspects') names to the victims' accounts for the purposes of fraudulently ordering or purchasing merchandise, and to apply fraudulently for credit cards issued in the USPS customers' names.

c. The members of the mail theft ring will also steal U.S. Mail to obtain personal checks, money orders, and cash or other cash equivalents, originally completed and mailed by the

true account holders as payment to the account holders' creditors. The checks may then be used to gain financial information, including account numbers and account holders' names and addresses. Often this information is used to counterfeit additional checks, which are then fraudulently made payable to other members of the ring. The checks may also be chemically "washed" to remove the handwritten information and additionally altered to be made payable in higher amounts than originally written and fraudulently cashed by ring members.

    d.  The members of the mail theft ring typically use a current residence, or rent cheap motel rooms, where they keep the tools of their trade, including stolen U.S. Mail, stolen checks and credit cards, notebooks listing USPS customers' personal information, materials for creating false identification cards, computer equipment, check-washing chemicals, and materials for constructing "fishing" devices.

    e.  The proceeds generated from the mail theft and related fraud activities are often used to buy methamphetamine or other illegal drugs, which are then used to recruit additional individuals to facilitate the scheme.

## IV. SUMMARY OF PROBABLE CAUSE

  5.  On or about December 12, 2018, Wells Fargo Bank check #217 belonging to victims "J.C." and "E.C." made payable to the Franchise Tax Board was stolen out of a USPS blue collection box

in Los Angeles, CA. On December 13, 2018, CARDENAS deposited the check into his own Wells Fargo Bank checking account. The check had been altered showing payable to CARDENAS.

## V. STATEMENT OF PROBABLE CAUSE

6. I have obtained the following information through the course of my investigation and from conversations and correspondence with Postal Inspectors, others investigating this matter, conversations with victims, and reviewing reports.

### A. Information from Wells Fargo Bank

7. Between February 14 and March 6, 2019, I received and reviewed Wells Fargo Bank case summary report FCI-2018122700505 and spoke with Wells Fargo Bank Financial Crimes Investigator C. Stocker. The report and my conversations with Investigator Stocker provided the following information:

    a. On December 12, 2018, CARDENAS went to the Wells Fargo Bank branch located at 2970 Harbor Blvd., Costa Mesa, CA. Using his true name, Social Security Number (XXX-XX-8974), California Driver's License number (XXXX2970), date of birth, and address on 25th Street in Los Angeles, CARDENAS opened checking account number XXXXXX9197 ("CARDENAS' account"). CARDENAS made an initial account opening deposit of $25.

    b. On March 6, 2019, I spoke with Investigator Stocker and he confirmed that when CARDENAS opened his account on

5

December 12, 2018, CARDENAS received a temporary ATM/debit card and programmed a PIN number for that card.

       c.   On December 13, 2018, check #217 payable to CARDENAS in the amount of $18,000 drawn on Wells Fargo Bank account number XXXXXX3138 in the names of victims J.C. and E.C. was deposited into CARDENAS' account. The deposit occurred at the Wells Fargo Bank Quail Hill branch located at 6503 Quail Hill Parkway, Irvine, CA 92603. The deposit was for $18,000 less $400 cash back.

       d.   On December 14, 2018, a $4,000 ATM withdrawal was made from CARDENAS' account at the Wells Fargo Harbor and Wilson branch located at 2300 Harbor Blvd., Suite B, Costa Mesa, CA 92626.

       i.   On March 6, 2019, Investigator Stocker confirmed that CARDENAS' debit card and PIN number were used to make the $4,000 withdrawal.

       e.   On December 14, 2018, a $6,000 withdrawal from CARDENAS' account was attempted at the Wells Fargo Bank Orange County Airport branch located at 4590 MacArthur Blvd., Newport Beach, CA 92660.

       i.   On March 6, 2019, Investigator Stocker confirmed that the individual attempting the $6,000 withdrawal swiped CARDENAS' debit card at the teller window. He also provided a second form of identification in the name of "Oscar

6

Cardenas." The branch teller denied the transaction because the teller noticed the individual attempting to make the withdrawal did not match the photo on the identification provided by the individual. Further, the signature on the withdrawal slip did not match the signature card.

f. Victim E.C. filed a claim on the $18,000 check, reporting it had been altered. E.C. issued the $18,000 check payable to the Franchise Tax Board. E.C. placed the check in a USPS blue collection box near her home in Los Angeles, CA, the evening of December 12, 2018.

g. Investigator Stocker contacted E.C., who stated she placed the check in a USPS blue collection box at the corner of Durango and Airdrome in the city of Los Angeles on December 12, 2018, at approximately 9:00 p.m. The next day E.C. reviewed her bank account and saw the check was pending. E.C. knew it had been stolen since it was originally made payable to the Franchise Tax Board in Sacramento, CA.

h. Investigator Stocker reviewed surveillance photos and observed two different individuals transacting on CARDENAS' account. The first individual, who appears to be CARDENAS, is seen in the photos opening the account and making the initial account deposit. CARDENAS also made the $18,000 check deposit. An unidentified male conducted the abovementioned successful $4,000 withdrawal and the attempted $6,000 withdrawal.

7

8.  On February 19, 2019, I obtained a copy of CARDENAS' California Department of Motor Vehicles ("DMV") Driver's License number XXXX2970, the same identification number CARDENAS provided on his Wells Fargo checking account application. The same day, I reviewed the transaction history, opening deposit record, account application, and surveillance photos associated with CARDENAS' account.

   a.  After reviewing the Wells Fargo Bank surveillance photographs and CARDENAS' DMV photograph, I believe CARDENAS is the individual in the bank photographs making the initial $25 deposit when opening CARDENAS' account and making the $18,000 fraudulent deposit into CARDENAS' account.

   b.  After reviewing the Wells Fargo Bank surveillance photographs taken December 14, 2018, I believe the same unknown male, not CARDENAS, is depicted attempting the teller withdrawal from the Wells Fargo Orange County Airport Branch located in Newport Beach, CA and the successful ATM withdrawal from the Wells Fargo Harbor and Wilson Branch located in Costa Mesa, CA.

   **B.   Victim Interviews**

9.  On February 28, 2019, I telephonically interviewed victim E.C. of Los Angeles, CA, regarding the theft report she filed with Wells Fargo Bank. E.C. told me the following:

       a.    On December 12, 2018, E.C. wrote Wells Fargo Bank check #217 in the amount of $18,000 made payable to the Franchise Tax Board.

       b.    On December 12, 2018, at approximately 9:00 p.m., E.C. placed the check inside a USPS blue collection box located on the corner of Durango Avenue and Airdrome Avenue in the city of Los Angeles.

       c.    On December 13, 2018, E.C. checked her Wells Fargo Bank account online and noticed that check #217 had been negotiated and placed in pending status. Knowing that if the check had been picked up by a USPS Letter Carrier on December 13, 2018, it would not be possible for the check to have already reached Sacramento and been negotiated, E.C. contacted Wells Fargo. E.C. informed Wells Fargo that check #217 had been stolen and fraudulently negotiated. E.C. asked the bank employee to stop payment on the check and close out her account. E.C. learned that individuals were able to withdraw $4,000 of the $18,000 check before Wells Fargo stopped the payment.

## VI. CONCLUSION

10. Based upon the foregoing, I believe there is probable cause to charge OSCAR CARDENAS for violations of Title 18, United States Code, Section 1708, possession of stolen mail, and Title 18, United States Code, Section 1344, bank fraud.

/S/
Loren Rofé
UNITED STATES POSTAL INSPECTOR

Subscribed and sworn to before me this 25 day of March, 2019.

**AUTUMN D. SPAETH**

UNITED STATES MAGISTRATE JUDGE